Rutberg, J.
This matter comes to us as a result of the allowance of defendant/ appellee insurance company’s motion for summary judgment in plaintiff/appellant’s action for Personal Injury Protection [“PIP”] benefits under appellant’s policy of insurance issued by appellee. This appeal also allows us to comment upon the apparent conflict which may exist in two previous Appellate Division cases: Hodnett v. Arbella Mutual Insurance Company, 1996 Mass. App. Div. 131 [Northern District]; and Iaconi-Young v. Arbella Mutual Insurance Company, 1998 Mass. App. Div. 63 [Western District].
The facts are largely uncontested. Appellant [hereinafter “Plaintiff’] was a pedestrian in a New Hampshire parking lot when she was struck by a motor vehicle operated by appellee’s [hereinafter “defendant” or “insurer”] insured, Teryl Watson. The incident occurred in late August 1996, and plaintiff placed a claim with defendant within days. In the succeeding two months, insurer twice requested that plaintiff submit to a tape recorded statement under oath to which she refused to comply. Thereafter, plaintiff submitted, a PIP application to defendant in late November 1996; and, on January 8,1997, insurer issued a reservation of rights letter to plaintiff, demanding that she comply with the terms of her policy. Defendant then scheduled an independent medical examination [“IME”] for late January which plaintiff failed to attend; after plaintiff failed to also attend a rescheduled IME, insurer denied plaintiff PIP benefits citing her “unilateral decision to forego the IME’s.” Plaintiff then filed this action in September 1997 claiming breach of contract and statutory violations of G.L.c. 93A and 176D. Insurer’s motion for summary judgment was granted by the trial court on October 22,1998, from which plaintiff has filed a timely appeal.
In the Hodnett case, the Northern District was faced with a very similar set of facts; although, in that case the claimant affirmatively refused to participate in the IME, where here plaintiff simply did not appear when asked to do so on two separate occasions. However, in this case as in Hodnett, the plaintiff “offered no valid excuse, grounded in fact, for not submitting to the IME.” Hodnett, supra at 132. In the case at bar, claimant refused to attend the IME because her insurer had previ *191 ously demanded that she submit to a recorded oral examination under oath; and, claimant’s counsel was familiar with our earlier decision in the Iaconi-Young case where we held that the failure of a claimant to give its insurer a taped statement violated the terms of the insurance policy.
While the facts of this case are, on one hand, strikingly similar to those in Iaconi-Young, the cases reached us in very different procedural postures. In Iaconi-Young, the trial court made a factual finding, after trial, that insurer’s reservation of rights letter set “a tone and line of direction that would cause anyone to infer that the [insurer] had its back up and was setting the stage for a denial of coverage letter.” Iaconi-Young, supra at 64. This finding of fact is binding upon us unless it is clearly erroneous, and we did not so conclude; therefore, the record of the Iaconi-Young case presented us with the situation where a violation of a contractual term yielded a denial of coverage. This case is the opposite as it involves the insured’s failure to perform a statutory obligation [which is also contractual] as a result of a putative contractual violation by her insurer. The policy requirement that the insured submit to an IME is grounded in the statutory language set forth in G.L.c. 90, §34M which states:
The injured party shall submit to physical examinations by physicians selected by the insurer as often as may be reasonably required ... to enable the insurer to obtain medical reports and other needed information to assist in determining the amounts due.
The failure of this plaintiff to attend a reasonably scheduled IME was rightly determined to constitute her failure to cooperate with her insurer which then justified the insurer’s denial of coverage.
In this case, we have neither evidence nor a finding that the reservation of rights letter issued by the insurer was tantamount to a denial of coverage. Therefore, we must remand this case to the trial court for such a determination. To the extent that Iaconi-Young appears to be contrary to the holding in the Hodnett case, we hereby limit Iaconi-Young to the facts of that case.